IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VARIOUS PLAINTIFFS | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| | : | |
| | : | Transferred from the |
| v. | : | District of North Dakota |
| | : | |
| | : | |
| | : | Case Nos.: See Exhibit A |
| VARIOUS DEFENDANTS. | : | (attached hereto) |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    FEBRUARY 14, 2012

TABLE OF CONTENTS

I.   BACKGROUND................................................ 2
II.  LEGAL STANDARD............................................ 3
     A.   SUMMARY JUDGMENT STANDARD........................... 3
     B.   THE APPLICABLE LAW................................. 4
     C.   PRODUCT IDENTIFICATION/CAUSATION UNDER NORTH DAKOTA
          LAW............................................... 4
III. DISCUSSION................................................ 8
     A.   DEFENDANT'S ARGUMENT............................... 8
     B.   PLAINTIFFS' ARGUMENTS.............................. 8
     C.   ANALYSIS..........................................11
IV.  CONCLUSION...............................................21

Before the Court are Motions for Summary Judgment in nineteen (19) various cases originating in North Dakota, all of which are part of MDL-875, the consolidated asbestos products liability multidistrict litigation pending in the U.S. District Court for the Eastern District of Pennsylvania.  Defendant Foster Wheeler Corporation ("Foster Wheeler") has moved for summary judgment in each case on grounds of insufficient evidence.

## I.    BACKGROUND

The "Amoco Cases" were transferred from the United States District Court for the District of North Dakota to the United States District Court for the Eastern District of Pennsylvania in 1992 (single plaintiff cases) and 1993 (multi-plaintiff action on behalf of sixty-six (66) different plaintiffs), where they were administratively consolidated for pre-trial purposes as part of MDL-875.

Each of the decedents in these cases ("Decedents") worked at the same Amoco refinery in Mandan, North Dakota and was thereafter diagnosed with an asbestos-related illness.  Defendant Foster Wheeler built a 140-foot high Alkylation unit at the Mandan Amoco refinery in 1957. Defendant Foster Wheeler has moved for summary judgment in many of the "Amoco Cases," arguing that there is insufficient product identification evidence to support a finding of causation with respect to its product(s).[1]  Foster Wheeler asserts that North Dakota law applies.

---

[1]    In June of 2011, the Court addressed similar motions for summary judgment made by Foster Wheeler in cases brought by Plaintiffs who alleged exposure at this same Amoco refinery in Mandan, North Dakota. See, e.g., Miller v. ACandS, Inc., 09-68111, 2011 WL 5505429 (E.D. Pa. June 23, 2011)(Robreno, J.); Goldade v. AcandS, Inc., 09-68096, 2011 WL 5505426 (E.D. Pa. June 23, 2011)(Robreno, J.); Wallace v. ACandS, Inc., 09-68112, 2011 WL 5505432 (E.D. Pa. June 23, 2011)(Robreno, J.)  The Court granted each of these motions.

Plaintiffs in nineteen (19) of the cases (listed in Exhibit A, attached hereto) have opposed Foster Wheeler's motions, contending that summary judgment is not warranted because there is sufficient circumstantial evidence from which a reasonable jury could conclude that their Decedent's asbestos-related illness was caused by exposure to Foster Wheeler's product(s). Plaintiffs assert that North Dakota law applies.

## II.  LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party.  "After making all reasonable inferences in the nonmoving party's favor,

3

there is a genuine issue of material fact if a reasonable jury
could find for the nonmoving party." Pignataro v. Port Auth. of
N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance
Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While
the moving party bears the initial burden of showing the absence
of a genuine issue of material fact, meeting this obligation
shifts the burden to the non-moving party who must "set forth
specific facts showing that there is a genuine issue for trial."
Anderson, 477 U.S. at 250.

    B.   The Applicable Law

        The parties have all agreed that North Dakota
substantive law applies. Therefore, this Court will apply North
Dakota law in deciding Foster Wheeler's Motions for Summary
Judgment. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see
also Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945).

    C.   <u>Product Identification/Causation Under North Dakota Law</u>

        This Court has previously addressed the issue of
product identification/causation under North Dakota law and has
thoroughly explored the contours of that state's law.  <u>See</u>, <u>e.g.</u>,
<u>Various Plaintiffs v. Various Defendants (In Re Asbestos Products</u>
<u>Liability Litigation)</u>, 2010 WL 3397473 (E.D. Pa. Aug. 26,
2010)(Robreno, J.)(adopting the July 30, 2010 Report and
Recommendation of Chief Magistrate Judge Thomas J. Rueter
regarding summary judgment motions of defendant S.O.S. Products

4

Company, Inc., appearing at 2010 WL 3397472); <u>Miller v. ACandS,</u>
<u>Inc.</u>, 09-68111, 2011 WL 5505429 (E.D. Pa. June 23, 2011)(Robreno,
J.). In <u>Miller</u>, the Court wrote:

> The Supreme Court of North Dakota
> has not addressed what evidence a Plaintiff
> must present in order to survive summary
> judgment in the asbestos context. Under North
> Dakota law, "a proximate cause is a cause
> which had a substantial part in bringing
> about the harm or injury either immediately
> or through happenings which follow one
> another." <u>Andrews v. J.W. O'Hearn</u>, 387 N.W.2d
> 716, 726 (N.D. 1986) (internal citations
> omitted). There must be a causal link between
> the defendant's conduct and the injury.
> <u>Andrews</u>, 387 N.W.2d at 727 (citing <u>Mourn v.</u>
> <u>Maercklein</u>, 201 N.W.2d 399, 402 (N.D. 1972)).
> "'Proximate cause [is]'that cause which, as a
> natural and continuous sequence, unbroken by
> any controlling intervening cause, produces
> the injury, and without which it would not
> have occurred.'" <u>Andrews</u>, 387 N.W.2d at 727
> (quoting <u>Johnson v. Minneapolis, St. P. &</u>
> <u>S.S.M. Ry. Co.</u>, 54 N.D. 351, 209 N.W. 786,
> 789 (N.D. 1926); <u>Knorr v. K-Mart Corp.</u>, 300
> N.W.2d 47 (N.D. 1980)).
>
> Magistrate Judge Karen K. Klein of
> the United States District Court for the
> District of North Dakota applied a liberal
> product identification standard in
> recommending that defendants' motions for
> summary judgment be denied in <u>Adolph v.</u>
> <u>A.P.I., Inc.</u> (D.N.D. 1991). Magistrate Judge
> Klein Concluded that coworker testimony or
> evidence that a plaintiff was employed by a
> company at the same time that the company was
> using defendant's asbestos-containing
> products could be sufficient to survive
> summary judgment and that a plaintiff need
> not specifically describe exposure to the
> defendant's products. <u>Id.</u> at 3. Magistrate
> Judge Klein also recognized that, even if the
> defendants were entitled to summary judgment
> as to product identification, since they had

not moved for summary judgment as to
plaintiff's conspiracy claims, "no useful
purpose would be served by the piecemeal
granting of partial summary judgments on
exposure when a defendant must nonetheless
remain in the case because of the conspiracy
claims." Id. at 4. Magistrate Judge Klein did
not consider any of the evidence presented
against the defendants and noted that "[t]he
motions may be renewed as to particular
plaintiffs at trial." Id.

In an unpublished opinion, the
United States Court of Appeals for the Eighth
Circuit addressed product identification and
causation in the asbestos context. Bossert v.
Keene Corp., 19 F.3d 1437, 1994 WL 108844
(8th Cir. 1994). The United States District
Court for the District of North Dakota denied
defendant MacArthur Corp.'s motion for
judgment as a matter of law and MacArthur
appealed this decision. Id. at *1. The court
noted that,

> [a] cause is proximate if it 'had a
> substantial part in bringing about
> the harm or injury either
> immediately or through happenings
> which follow one another.' Andrews,
> 387 N.W.2d at 727. North Dakota
> courts have not addressed the
> standard for proving causation in
> the specific context of an asbestos
> personal injury case, and MacArthur
> urges us to use the 'frequency,
> regularity, and proximity' test
> used in other states. See, e.g.,
> Jackson v. Anchor Packing Co., 994
> F.2d 1295, 1301–03 (8th Cir. 1993)
> (applying Arkansas law); Lohrmann
> v. Pittsburgh Corning Corp., 782
> F.2d 1156, 1162–63 (4th Cir. 1986)
> (applying Maryland law).

Plaintiff's proof of exposure
consisted of Mr. Bossert's testimony that he
worked at the Amoco refinery for a total of
approximately eight months and the testimony

of Robert Clooten, a former insulation tradesperson at the Amoco refinery who testified that about half of the cements installed in the Amoco refinery from 1954 until 1965 were manufactured by MacArthur and that about half of this pipe covering was still in place. 1994 WL 108844, at *2. The court concluded that the plaintiff's proof of exposure was "entirely circumstantial" and that "[b]ecause Bossert failed to produce substantial evidence of exposure to MacArthur's products ... Bossert cannot satisfy any proximate cause standard." Id. at *1-2. Accordingly, the court reversed the district court and granted MacArthur's motion for judgment as a matter of law. Id. at *2.

The Bossert court granted defendant's motion for summary judgment based on evidence that the plaintiff worked a refinery and coworker testimony that the defendant's product was present at the refinery. In Adolf, Magistrate Judge Klein denied defendants' motions for summary judgment in this scenario, but relied on the fact that the defendants would not be dismissed from the cases even if the motions were granted and noted that the defendants would have the opportunity to renew these motions. This Court will not attempt to predict the law of North Dakota when the Supreme Court of North Dakota has not yet addressed product identification in the asbestos context. Rather, in keeping with the general products liability standard, Plaintiff must merely raise a genuine issue of material fact as to whether exposure to the Defendant's product proximately caused the Plaintiff's injury. Andrews, 337 N.W.2d at 727.

Miller, 2011 WL 5505429 at *1 n.1.

There have been no new decisions from any court of appeals in North Dakota since this Court's discussion of the North Dakota product identification standard in June of 2011.

7

III.  DISCUSSION

    A.  **Defendant's Argument**

        Foster Wheeler concedes that it built a 140-foot high Alkylation unit at the Amoco facility in 1957.  It argues, however, that Plaintiffs in these cases have failed to identify sufficient evidence to support a finding of causation with respect to its work or its product(s) at the Amoco facility.

    B.  **Plaintiffs' Arguments**

        Plaintiffs contend generally that they have identified sufficient product identification evidence under the standard that the court should apply.  Plaintiffs acknowledge that any asbestos associated with the Alkylation unit was asbestos of a component part manufactured by a company other than Foster Wheeler (including, specifically, Johns-Manville).  Plaintiffs cite to state trial court and federal district court cases to argue that a liberal application of the "substantial factor" test is warranted under the precedent of trial courts in North Dakota, and that circumstantial evidence is sufficient to survive summary judgment.  Of particular note, Plaintiffs cite to <u>Nogosek v. Asbestos Corp. of America</u>, No. A2-87-173, 1989 WL 1635767 (D.N.D. 1989), quoting the following excerpt:

    A) Circumstantial Evidence
    When claiming wrongful death, a plaintiff must show
    that he or she has been exposed to petitioner's

asbestos products. Celotex Corp. v. Catrett, 477 U.S.
317, 319 (1986). When Clarence Nogosek was deposed, he
failed to identify by name many of the defendants in
this case. **The defendants, however, incorrectly assume
that unless Mr. Nogosek was able to specifically
describe exposure to a defendant's products, summary
judgment is in order. This is not the case.**

Mild exposure to asbestos can be a factor in proving
plaintiff's injury. See Rocco v. Johns-Manville Corp.,
754 F.2d 110, 113 (3rd Cir. 1983). Evidence of exposure
alone can allow an inference of injury. See Roehling v.
Nations' Gypsum Co. Gold Bond Bldg. Products, 786 F.2d
1225, 1228 (4th Cir. 1986). Circumstantial evidence
presented to the Court in this case allows a potential
finding that Mr. Nogosek was exposed to defendants'
products. Summary judgment is therefore inappropriate
at this time.

1989 WL 1635767, at #1-2 (emphasis added).  During oral argument,

Plaintiffs asserted that Bossert and the decisions issued by this

MDL Court in June of 2011 are distinguishable because of the

short time period of alleged exposure experienced by the

plaintiffs in those case as compared to the Decedents at hand.

In each of the nineteen (19) cases in which Plaintiffs

have opposed Foster Wheeler's motion for summary judgment,

Plaintiffs submit as part of their evidence the testimony of one

or more of the following former workers at the Amoco facility,

each of whom was deposed in the early stage of the litigation of

the "Amoco Cases" now before the Court:

(i)  Robert E. ~~Carufel~~ (died of mesothelioma; deposed 1991)

Mr. Carufel testified that he was involved in the

storage of asbestos insulation at the Amoco plant – including at

the Alkylation Unit – and that this work resulted in exposure to

asbestos, including but not limited to exposure resulting from physically tearing off asbestos and replacing it.

(ii)   Robert Clooten (at facility 1955-1983; deposed 1991)

Mr. Clooten, who worked as a craftsman in the pipefitting, welding, and insulation trades, testified that he was involved in dusty work associated with the use of pipecovering and insulating block at the facility from 1954 to 1983. He testified that Kaylo brand pipecovering was among the sources of asbestos exposure. He testified that about half of the asbestos pipecovering that was present during his work at the facility was still in place at the facility at the time of his deposition (1991).

(iii)   Gerald Assel (deposed 1996)

Mr. Assel testified that, during "shut-downs" of the facility, everyone would work doing everything that needed to be done to repair and maintain the plant and that, on "Energy Saturdays," everyone would work overtime repairing steam leaks and insulation throughout the plant.

(iv)   Lyle Berg (deposed 1996)

Mr. Berg testified that his work as a laborer, relief operator, and craftsman or laborer on maintenance "turn-arounds" took him to every part of the refinery. He testified about the system of "labor gangs" used to assist and clean up after every type of trade working at the facility. He testified that nearly

10

every vessel and piece of equipment was covered with insulation.

In short, Plaintiffs rely upon the testimony of these former Amoco workers about their job duties and the general work processes in place at the refinery (e.g., the "labor gangs," nature and scope of work done during "shut-downs," "turn-arounds" and "Energy Saturdays," and the way in which this work was assigned) to provide circumstantial evidence from which Plaintiffs contend a jury could conclude that the Decedents were exposed to asbestos as a result of asbestos-containing products supplied to and installed in the facility by Foster Wheeler.

### C. Analysis

As a preliminary matter, the Court has considered Plaintiffs' arguments that the standard to be applied in assessing the sufficiency of their evidence pertaining to product identification and causation should be modified from that previously applied by this Court because (1) Nogosek indicates that circumstantial evidence of exposure to a given Defendant's product is sufficient to survive summary judgment and (2) the controlling case arguably suggesting otherwise (Bossert) is distinguishable by virtue of the comparatively short time period of alleged exposure therein.  The Court rejects this argument and notes that there have been no new decisions from any appellate court in North Dakota since the time the Court first addressed this issue.  Furthermore, the Court notes that Nogosek (1) was

decided several years prior to the Eight Circuit's opinion in
Bossert, (2) made clear that some evidence of exposure to the
defendant's product is necessary, and (3) denied defendants'
motion where there was in fact direct evidence of exposure to the
moving defendants' asbestos-containing products.[2]  Having
established that the standard to be applied remains the same as
that previously set forth by this Court for cases brought under
North Dakota law, the Court now turns to examine the sufficiency
of Plaintiffs' evidence in each of the nineteen (19) cases
presently before it.

A short summary of the evidence for each Decedent is as
follows:

|   | Decedent Name | Summary of Evidence |
|---|---|---|
| 1 | Raymond Birst | No deposition testimony of Mr. Birst; |
|   |   | Evidence that Mr. Birst worked at facility 1955-1985; |
|   |   | Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others; |

---

[2]     The Nogosek court noted that, although the decedent
(Mr. Nogosek) only recalled two manufacturers of asbestos-
containing products to which he was exposed, and was unable to
identify by name the products of the moving defendants prior to
his death, "[s]uppliers who sold asbestos containing products to
Mr. Nogosek, however, have stated that products of [the moving
defendants] and others were used by him as well."  1989 WL
1635767, at *1.

| | | No evidence that Mr. Birst worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
|---|---|---|
| 2 | Clarence Fateley | No deposition testimony of Mr. Fateley; Evidence that Mr. Fateley worked at facility 1954-1984; Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others; No evidence that Mr. Fateley worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 3 | Mike Hilzendeger | No deposition testimony of Mr. Hilzendeger; Evidence that Mr. Hilzendeger worked at facility 1953-1984; Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others; No evidence that Mr. Hilzendeger worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 4 | Boyd Jaskoviak | No deposition testimony of Mr. Jaskoviak; Evidence that Mr. Jaskoviak worked at facility 1954-1988; Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others; |

| | | |
|---|---|---|
| | | No evidence that Mr. Jaskoviak worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 5 | Creighton Kettelson | No deposition testimony of Mr. Kettelson;<br><br>Evidence that Mr. Kettelson worked at facility 1954-1983;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>Deposition testimony of former Amoco employee Leonard Ereth, who testified that Mr. Kettleson may have worked in Alkylation unit at one time, although he was not sure |
| 6 | Joseph Leingang | No deposition testimony of Mr. Leingang;<br><br>Evidence that Mr. Leingang worked at facility 1954-1986;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Leingang worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 7 | Richard Leingang | Mr. Leingang was deposed as a co-worker in another plaintiff's action but did not testify that he was exposed to asbestos attributable to Foster Wheeler;<br><br>Evidence that Mr. Leingang worked at facility 1955-1995;<br><br>Evidence that Foster Wheeler |

| | | |
|---|---|---|
| | | constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Leingang worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 8 | Lorraine McCulley | No deposition testimony of Mr. McCulley;<br><br>Evidence that Mr. McCulley worked at facility 1956-1989;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. McCulley worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 9 | Alvie Nixon | No deposition testimony of Mr. Nixon;<br><br>Evidence that Mr. Nixon worked at facility 1954-1973;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Nixon worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 10 | Joseph Senger | No deposition testimony of Mr. Senger;<br><br>Evidence that Mr. Senger worked at facility 1954-1986;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which |

| | | |
|---|---|---|
| | | contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Senger worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 11 | Daryl Sheldon | No deposition testimony of Mr. Sheldon;<br>Evidence that Mr. Sheldon worked at facility 1955-1975;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Sheldon worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 12 | Gerard Sheldon | No deposition testimony of Mr. Sheldon;<br><br>Evidence that Mr. Sheldon worked at facility 1955-1989;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Sheldon worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 13 | Melvin Skager | No deposition testimony of Mr. Skager;<br><br>Evidence that Mr. Skager worked at facility 1955-1978;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others; |

| | | No evidence that Mr. Skager worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
|---|---|---|
| 14 | Larry Sullivan | No deposition testimony of Mr. Sullivan;<br><br>Evidence that Mr. Sullivan worked at facility 1954-1989;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Sullivan worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 15 | Wallace Toepke | Mr. Toepke was deposed; he testified that he didn't specifically recall Foster Wheeler but he thought perhaps the company supplied clothing or gloves; Defendant Foster Wheeler contends that Mr. Toepke specifically testified that he never worked in the Alkylation unit, but Defendant failed to attach the page of the deposition transcript where it is claimed that he testified to this (p. 77)<br><br>Evidence that Mr. Toepke worked at facility 1954-1985;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Toepke worked in Alkylation unit or otherwise around a product of Foster Wheeler's |
| 16 | William Woods | No deposition testimony of Mr. Woods;<br><br>Plaintiffs contend that Mr. Woods |

| | | |
|---|---|---|
| | | worked for a time as a lab technician; Deposition testimony of co-worker Lyle Berg indicates lab technicians would have been exposed to asbestos inside and outside of the lab and would work in "all parts of the refinery" with "all trades"<br><br>Defendant Foster Wheeler contends that Mr. Woods's daughter (Sharon Schwahn) specifically testified that he did not work in the Alkylation unit, but Defendant failed to attach the page of the deposition transcript where it is claimed that she testified to this (p. 43)<br><br>Evidence that Mr. Woods worked at facility 1954-1987;<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Woods was exposed to asbestos from a product of Foster Wheeler's |
| 17 | Richard Zachmeier | Mr. Zachmeier was deposed in 1993 in connection with another person's lawsuit but did not testify that he was exposed to asbestos attributable to Foster Wheeler<br><br>Evidence that Mr. Zachmeier worked at facility 1955-1981;<br><br>Co-worker deposition testimony suggests that Mr. Zachmeier worked all over facility<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others; |

| | | No evidence that Mr. Zachmeier was exposed to asbestos from a product of Foster Wheeler's |
|---|---|---|
| 18 | William Zachmeier | No deposition testimony of Mr. Zachmeier;<br><br>Evidence that Mr. Zachmeier worked at facility 1955-1990;<br><br>Co-worker deposition testimony suggests that Mr. Zachmeier worked all over facility<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Zachmeier was exposed to asbestos from a product of Foster Wheeler's |
| 19 | James Zoller | Mr. Zoller was deposed; he testified that he did not know what type of product(s) Foster Wheeler manufactured and that he did not recall working around any Foster Wheeler employees<br><br>Evidence that Mr. Zoller worked at facility 1955-1972;<br><br>Co-worker deposition testimony suggests that Mr. Zoller worked all over facility<br><br>Evidence that Foster Wheeler constructed and supplied Alkylation unit at facility in 1957 – which contained asbestos component parts manufactured by others;<br><br>No evidence that Mr. Zoller was exposed to asbestos from a product of Foster Wheeler's |

Although there is evidence that each of the Decedents
in these cases worked at the Amoco facility, there is no evidence
that any Decedent was exposed to asbestos from a product of
Defendant Foster Wheeler's or as a result of work that was
performed by Foster Wheeler in constructing the Alkylation unit.
Although there is testimony that a few of the Decedents worked
"all over the facility," there is no evidence that this work
resulted in any one Decedent's exposure to asbestos.  Plaintiffs
suggest that the testimony of former Amoco workers Mr. Carufel,
Mr. Clooten, Mr. Assel, and/or Mr. Berg can be used as a basis
for inferring that the Decedents were exposed to asbestos
supplied by Foster Wheeler despite the fact that this testimony
does not identify any particular Decedent as having had such
exposure.  The Court notes that this evidence lacks the quality
and specificity required to show that a defendant's product (or
conduct) was a substantial part of the causation of a Decedent's
illness and concludes that any such inference of causation by a
jury would be based on speculation.  See Bossert, 1994 WL 108844,
at *2.  Plaintiffs have failed to carry their burden of pointing
to evidence sufficient to support a finding of causation.
Accordingly, summary judgment in favor of Defendant must be
granted. See Miller, 2011 WL 5505429, at *1 n.1 (citing Andrews,
337 N.W.2d at 726-27 and Bossert, 1994 WL 108844, at *1-2).

**IV.  Conclusion**

Summary judgment in favor of Defendant Foster Wheeler is warranted in each of the nineteen (19) cases in which Plaintiffs opposed Foster Wheeler's motion (<u>see</u> Exhibit A, attached hereto) because there is no evidence that any Decedent was exposed to asbestos from a product of – or as a result of work performed by – Foster Wheeler.  Accordingly, Defendant's motion in each case is granted.

**Exhibit A**

**Motions by Foster Wheeler
in Various Cases Transferred from the
United States District Court for the District of North Dakota**

|    | Decedent's Name | D.N.D.<br>Case No. | E.D. PA<br>Case No. | Doc.<br>No. |
|----|------------------|--------------------|---------------------|-------------|
| 1  | Raymond Birst | 90-00241 | 09-66623 | 33 |
| 2  | Clarence Fateley | 90-00249 | 09-66630 | 37 |
| 3  | Mike Hilzendeger | 92-00186 | 09-68033 | 14 |
| 4  | Boyd Jaskoviak | 90-00259 | 09-66640 | 28 |
| 5  | Creighton Kettelson | 90-00262 | 09-66643 | 28 |
| 6  | Joseph Leingang | 90-00265 | 09-66646 | 27 |
| 7  | Richard Leingang | 90-00266 | 09-66647 | 33 |
| 8  | Lorraine McCulley | 92-00186 | 09-68048 | 12 |
| 9  | Alvie Nixon | 90-00272 | 09-66653 | 29 |
| 10 | Joseph Senger | 90-00284 | 09-66665 | 34 |
| 11 | Daryl Sheldon | 90-00287 | 09-66668 | 34 |
| 12 | Gerard Sheldon | 90-00288 | 09-66669 | 31 |
| 13 | Melvin Skager | 90-00289 | 09-66670 | 29 |
| 14 | Larry Sullivan | 90-00292 | 09-66673 | 33 |
| 15 | Wallace Toepke | 90-00294 | 09-66675 | 33 |
| 16 | William Woods | 90-00298 | 09-66679 | 33 |
| 17 | Richard Zachmeier | 90-00300 | 09-66681 | 28 |
| 18 | William Zachmeier | 90-00301 | 09-66682 | 29 |
| 19 | James Zoller | 90-00302 | 09-66683 | 33 |